No. 25-6118

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

————————————

ANNETTE MATTIA, in her individual capacity and on behalf of the estate of
Raymond Mattia, et al.,

Plaintiffs-Appellees,

v.

SCOTT WHITEHOUSE, et al.,

Defendants-Appellants.

————————————

On Appeal from the United States District Court
for the District of Arizona

————————————

**REPLY BRIEF FOR APPELLANTS**

————————————

BRETT A. SHUMATE
*Assistant Attorney General*

JAYNIE LILLEY
SOPHIA SHAMS
*Attorneys, Appellate Staff*
*Civil Division, Room 7213*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-2495*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMARY OF ARGUMENT............................................. 1

ARGUMENT ...................................................................................... 3

    I.     Plaintiffs Improperly Urge This Court to Extend Bivens to Create a New Cause of Action Against Border Patrol Agents Engaged in Cooperative Efforts with Tribal Authorities on Tribal Land Adjacent to the Southern International Border..................3

    II.    The Individual Defendants Are Entitled to Qualified Immunity ........10

    III.   Plaintiffs' Jurisdictional Arguments Lack Merit ................................16

CONCLUSION ................................................................................. 21

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Cases:**            **Page(s)**

*Arar v. Ashcroft*,
  585 F.3d 559 (2d Cir. 2009) ........................................................ 7-8

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011) .....................................................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................... 17, 18, 19, 20

*Baker v. City of Madison*,
  67 F.4th 1268 (11th Cir. 2023) ...................................................15

*Brosseau v. Haugen*,
  543 U.S. 194 (2004) ...................................................................16

*Corbitt v. Vickers*,
  929 F.3d 1304 (11th Cir. 2019) ..................................................14

*District of Columbia v. Wesby*,
  583 U.S. 48 (2018) .....................................................................15

*Egbert v. Boule*,
  596 U.S. 482 (2022) ..................................................... 4, 5, 6, 7, 8

*Estate of Strickland v. Nevada County*,
  69 F.4th 614 (9th Cir. 2023).................................................. 11, 16

*Gelin v. Maryland*,
  132 F.4th 700 (4th Cir. 2025)......................................................18

*George v. Rehiel*,
  738 F.3d 562 (3d Cir. 2013) ........................................................17

*Graham v. Connor*,
  490 U.S. 386 (1989) .............................................................. 12, 13

*Guzman v. Acuarius Night Club LLC*,
    167 F.4th 217 (4th Cir. 2026)................................................................... 17-18

*Harmon v. City of Arlington*,
    16 F.4th 1159 (5th Cir. 2021)....................................................................20

*Harper v. Nedd*,
    71 F.4th 1181 (9th Cir. 2023)....................................................................17

*Henry v. Essex County*,
    113 F.4th 355 (3d Cir. 2024)....................................................................18

*Hernandez v. Mesa*,
    589 U.S. 93 (2020) ........................................................... 4, 5, 6, 9, 10

*Hodges v. City of Grand Rapids*,
    139 F.4th 495 (6th Cir. 2025)....................................................................20

*Johnson v. Jones*,
    515 U.S. 304 (1995) ........................................................... 2-3, 17

*Lewis v. Tripp*,
    604 F.3d 1221 (10th Cir. 2010)....................................................................18

*Logsdon v. U.S. Marshal Serv.*,
    91 F.4th 1352 (10th Cir. 2024)....................................................................8

*Mayfield v. City of Mesa*,
    131 F.4th 1100 (9th Cir. 2025)........................................................... 15, 20

*Mejia v. Miller*,
    61 F.4th 663 (9th Cir. 2023)....................................................................7, 17

*Mullenix v. Luna*,
    577 U.S. 7 (2015) ....................................................................16

*Napouk v. Las Vegas Metro. Police Dep't*,
    123 F.4th 906 (9th Cir. 2024)........................................................... 11, 16

*Orellana v. Godec*,
    145 F.4th 516 (4th Cir. 2025)....................................................................7

*Pearson v. Callahan*,
555 U.S. 223 (2009) ...............................................................................11

*Pettibone v. Russell*,
59 F.4th 449 (9th Cir. 2023)...............................................................7, 17

*Robinson v. Sauls*,
102 F.4th 1337 (11th Cir. 2024)..........................................................8, 10

*Sabbe v. Washington Cnty. Bd. of Comm'rs*,
84 F.4th 807 (9th Cir. 2023).................................................................11

*Scott v. Harris*,
550 U.S. 372 (2007) ...............................................................................20

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir.), *opinion amended on denial of reh'g*,
275 F.3d 1187 (9th Cir. 2001) .................................................................19

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998)..............................................................14

*Tennessee v. Garner*,
471 U.S. 1 (1985) ...................................................................................16

*Ziglar v. Abbasi*,
582 U.S. 120 (2017) ...................................................................... 4, 7, 10

*Zorn v. Linton*,
146 S. Ct. 926 (2026) ....................................................................... 15, 16

**Other Authority:**

Def. Visual Info. Distrib. Serv.,
*Body Worn Camera Video Release: Use of Force Incident, Ajo, Arizona*
(May 18, 2023), https://www.dvidshub.net/video/887917/useforce-
incident-ajo-arizona-may-18-2023 ........................................... 12-13, 13

## INTRODUCTION AND SUMMARY OF ARGUMENT

Although the Supreme Court has repeatedly cautioned against creating a *Bivens* remedy in novel contexts, the district court did just that when it erroneously allowed plaintiffs' excessive-force claim to proceed beyond the motion-to-dismiss stage. The district court also improperly denied the individual defendants qualified immunity. Each of these errors independently warrant reversal.

**1.** The district court plainly erred in recognizing a *Bivens* remedy for plaintiffs' excessive force claim against Border Patrol agents. Several factors weigh against recognizing a *Bivens* cause of action in this case. Unlike *Bivens*, this case involves a new category of defendants (Border Patrol agents) who were operating under an entirely different legal mandate and assisting tribal law enforcement efforts on tribal land adjacent to the U.S.-Mexico border. Because the claim here arises in a new context, the Court must consider the significant separation-of-powers concerns the Supreme Court has repeatedly cited as a reason for exercising caution before undertaking the legislative task of creating a new cause of action based directly on the Constitution. Numerous special factors make the creation of a *Bivens* remedy particularly inappropriate in this case.

Plaintiffs repeat the district court's erroneous contention that the Border Patrol agents were engaged in general law enforcement and not immigration enforcement or border security, arguing that this case does not present separation-

of-powers concerns that counsel against creating a *Bivens* remedy.  In so doing, plaintiffs ignore the meaningful differences between their claims and *Bivens* itself. And in any event, the Supreme Court has rejected the type of granular analysis on which plaintiffs rely, explaining that the relevant question is whether such claims may proceed in this narrow category of cases.  It is thus more than clear that the district court in this case improperly extended *Bivens*.

**2.**  The district court further erred when it denied the individual defendants qualified immunity.  This Court has recognized that the use of deadly force based on a reasonable belief of an imminent threat of harm does not violate the Fourth Amendment.  Although the complaint makes conclusory allegations that Raymond Mattia presented no threat of harm, the body camera footage incorporated by reference into the complaint shows actions by Mattia that officers reasonably perceived as threatening and justified the use of force.  In any event, plaintiffs fail to identify any clearly established law that prohibited the use of deadly force under these circumstances.  The individual defendants are thus entitled to qualified immunity.

**3.**  This Court has jurisdiction over this interlocutory appeal because an order denying qualified immunity is an appealable collateral order.  Plaintiffs fail to explain why individual defendants cannot appeal an order denying qualified immunity at the pleading stage.  Plaintiffs mistakenly rely on *Johnson v. Jones*,

515 U.S. 304, 307 (1995) (holding that denial of qualified immunity at summary judgment on the ground that the record in a raised genuine issue of fact was not an appealable "final decision"), but the Supreme Court has squarely rejected the argument that *Johnson* precludes review of denials of qualified immunity at the pleading stage. Moreover, courts of appeals regularly review denials of motions to dismiss based on qualified immunity on interlocutory appeal, including assessing whether a complaint's allegations are consistent with any body camera footage incorporated therein.

## ARGUMENT

I.     **Plaintiffs Improperly Urge This Court to Extend *Bivens* to Create a New Cause of Action Against Border Patrol Agents Engaged in Cooperative Efforts with Tribal Authorities on Tribal Land Adjacent to the Southern International Border.**

**A.** The district court plainly erred in extending *Bivens* to plaintiffs' excessive-force claim against Border Patrol agents involved in joint law enforcement efforts with local tribal authorities on tribal land adjacent to the southern border. As explained in the Opening Brief (at 3), many reasons counsel against implying a *Bivens* remedy in this case.

**1.** Plaintiffs' claims arise in a new context from *Bivens* itself. Under the Supreme Court's framework, a context is "new" when "the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court."

3

*Ziglar v. Abbasi*, 582 U.S. 120, 147 (2017) (quotation marks omitted). The Supreme Court has never recognized a *Bivens* claim for an alleged Fourth Amendment violation under similar circumstances. Indeed, *Bivens* "concerned an allegedly unconstitutional arrest and search" of the plaintiff's home by Federal Bureau of Narcotics officers. *Hernandez v. Mesa*, 589 U.S. 93, 103 (2020). That is wholly different from this case, which involves claims against Border Patrol agents, who operate under a different legal mandate, perform distinct law-enforcement activities related to immigration and border security that were not at issue in *Bivens*, and thus constitute a "new category of defendants." Opening Br. 16-17. *See generally Hernandez*, 589 U.S. 93 (declining to extend *Bivens* to an excessive-force claim against a Border Patrol agent allegedly involved in a cross-border shooting); *Egbert v. Boule*, 596 U.S. 482 (2022) (declining to extend *Bivens* to an excessive-force claim against a Border Patrol agent near the U.S.-Canada border). Moreover, unlike in *Bivens*, the individual defendants were acting in coordination with tribal law enforcement. That kind of coordination presents unique federal-tribal concerns that were not at issue in *Bivens*, making this a meaningfully different context.

Plaintiffs do not meaningfully dispute these distinctions, and they offer little basis to challenge the conclusion that their claim arises in a new context. Instead, plaintiffs repeat the district court's erroneous reasoning that because this case

4

involves "federal agents responding to criminal activity," this case arises in the same context as *Bivens* itself. Resp. Br. 9-10, 28. That argument ignores the meaningful differences between this case and *Bivens* that counsel against implying a cause of action here.

More significantly, plaintiffs fail to grapple with the constitutional concerns animating courts' reluctance to extend *Bivens*. The individual defendants in this case were not merely conducting general law enforcement duties; these Border Patrol agents were coordinating with tribal law enforcement to respond to shots fired in an area plaintiffs allege was "about a mile north of the international border with Mexico." ER-24. Thus, whatever "parallel circumstances" there may be between this case and *Bivens*, those "superficial similarities are not enough to support the judicial creation of a cause of action." *Egbert*, 596 U.S. at 495 (quotation marks omitted). That is especially true in a case like this which involves Border Patrol agents and thus implicates unique border security and foreign policy concerns. *See* Opening Br. 22-23; *Hernandez*, 589 U.S. 93 (declining to extend *Bivens* to an excessive-force claim against a Border Patrol agent allegedly involved in a cross-border shooting); *Egbert*, 596 U.S. 482 (declining to extend *Bivens* to an excessive-force claim against a Border Patrol agent near the U.S.-Canada border).

Plaintiffs dismiss these concerns on the ground that the individual defendants in this case were not specifically engaging in immigration enforcement or border security.  Resp. Br. 29.  Even assuming that their contention is accurate, merely asserting "a more 'conventional' excessive-force claim" is insufficient to resolve the question.  *Egbert*, 596 U.S. at 495.  The Supreme Court has instructed courts to look beyond the facts of a particular case; instead, the proper inquiry is "whether a court is competent to authorize a damages action not just against [one particular agent] but against Border Patrol agents generally."  *Id.* at 496.  That "answer, plainly, is no."  *Id.*; *see also Hernandez*, 589 U.S. at 108 ("Since regulating the conduct of agents at the border unquestionably has national security implications, the risk of undermining border security provides reason to hesitate before extending *Bivens* into this field.").  Extending *Bivens* to Border Patrol agents in this context carries the "risk of undermining border security."  *Egbert*, 596 U.S. at 494 (quoting *Hernandez*, 589 U.S. at 108).

Moreover, this case implicates unique federal-tribal coordination efforts that were entirely absent in *Bivens*—a point plaintiffs fail to consider entirely.  As explained in the Opening Brief (at 16), Border Patrol often cooperates with tribal law enforcement on tribal land near our international borders.  Indeed, plaintiffs allege that tribal dispatch "contacted Border Patrol and requested assistance" in an area near "the international border with Mexico" on the night in question.  ER-24.

6

These kinds of coordination efforts in these uniquely sensitive areas present an entirely different kind of law enforcement work than at issue in *Bivens*, and any extension of a damages remedy in that context warrants heightened caution. *See Mejia v. Miller*, 61 F.4th 663, 668 (9th Cir. 2023) (distinguishing between a Fourth Amendment claim arising in a home and a claim arising on federal lands). Allowing a damages remedy in this context threatens disruption of these coordination efforts, affecting federal-tribal relations. *See Orellana v. Godec*, 145 F.4th 516, 524 (4th Cir. 2025) (declining to extend *Bivens* to a case involving a joint task force, as these task forces operate under a different legal mandate and "raise federalism concerns that ordinary federal law-enforcement does not"). And more broadly, these kinds of coordination efforts involve immigration enforcement and border security, which in turn implicate national security concerns.

**2.** Special factors further counsel hesitation against extending *Bivens*. The Supreme Court in *Egbert* emphasized that courts should ordinarily exercise restraint and decline to extend *Bivens*. *See Pettibone v. Russell*, 59 F.4th 449, 454-57 (9th Cir. 2023). The special factors inquiry must concentrate on whether there is any indication that "the Judiciary is at least arguably less equipped than Congress to" weigh the costs and benefits of a damages action. *Egbert*, 596 U.S. at 492; *see Abbasi*, 582 U.S. at 136. A court need only have one reason to hesitate before answering that question, *see Egbert*, 596 U.S. at 496; *Arar v. Ashcroft*, 585

7

F.3d 559, 574 (2d Cir. 2009) (en banc) (observing that the bar is "remarkably low"), and there are ample reasons for hesitation here. *See* Opening Br. 20-23 (discussing the special factors that counsel hesitation).

First, Congress and the Executive have provided an administrative scheme for reporting allegations of officer misconduct, which the Supreme Court has recognized is an alternative remedial scheme that "independently foreclose[s] a *Bivens* action." *Egbert*, 596 U.S. at 497. Second, extending a damages remedy risks intrusion into the U.S. Customs and Border Protection's (CBP) coordination with tribal law enforcement and threatens unique federal interests, such as tribal-federal relations—as well as CBP's work with state and local entities. *See Robinson v. Sauls*, 102 F.4th 1337, 1345 (11th Cir. 2024) (recognizing "superficial similarit[ies]" between that case and *Bivens* but declining to imply a cause of action because doing so "could impact cooperation among law enforcement agencies and the operation of these task forces" (quotation marks omitted)); *Logsdon v. U.S. Marshal Serv.*, 91 F.4th 1352, 1359 (10th Cir. 2024) (special factors counseled against implying *Bivens* claim "where the impact of potential liability on cooperation among law-enforcement agencies needs to be assessed"). Third, recognizing a *Bivens* remedy in this context may also have systemwide consequences on CBP's law-enforcement activities involved in border security and immigration enforcement. *Egbert*, 596 U.S. at 493 ("Even in a particular case, a

8

court likely cannot predict the systemwide consequences of recognizing a cause of action under *Bivens*. That uncertainty alone is a special factor that forecloses relief." (citation modified)).

Plaintiffs fail to meaningfully grapple with these special factors. Plaintiffs entirely ignore the alternative remedial scheme provided by Congress, which independently forecloses a *Bivens* remedy here. And plaintiffs suggest that potential disruption to federal-tribal relations cannot be a special factor because the tribal authorities have "condemned" the conduct in this particular case. Resp. Br. 30-31. That tribal authorities allegedly condemned the conduct in this case only underscores the sensitive federal-tribal relations at issue. *See Hernandez*, 589 U.S. at 105-06 (emphasizing that Mexico's condemnation of the use of force underscored foreign policy issues at play and holding it was not the Judiciary's role to arbitrate between two sovereigns). Plaintiffs' argument also does not address the risk of intrusion into coordination between Border Patrol agents and local law enforcement. Border Patrol agents regularly coordinate with state and local law enforcement, and, in responding to requests for assistance, Border Patrol agents may not know whether a particular situation will involve immigration or border enforcement. In this case, the Tohono O'odham Nation Police Department sought assistance from Border Patrol agents in responding to a reported shooting near the southern international border. That kind of time-sensitive situation requires

9

immediate coordination, which would be significantly hindered if this Court were to extend *Bivens* to Border Patrol agents in the way that plaintiffs suggest.

If agents were subject to individual damages remedies depending on how a particular situation unfolds, there would be significant deterrent effects on this kind of coordination. *Robinson*, 102 F.4th at 1345 (noting the potential chilling effect for joint federal and state task forces, "which could negatively affect their operations," as a reason against extending *Bivens*). That kind of judicial intrusion counsels against recognizing a *Bivens* remedy. *See Abbasi*, 582 U.S. at 140 (noting "the risk of disruptive intrusion by the Judiciary into the functioning of other branches" as a reason against recognizing a *Bivens* cause of action).

Plaintiffs further argue that these factors do not foreclose a *Bivens* remedy because they contend Border Patrol agents were not performing immigration enforcement or border protection duties. Resp. Br. 30. Plaintiffs' special-factors argument is directly contradicted by the precedents of the Supreme Court and this Court's holding that intrusion into the Executive Branch's border security responsibilities and related policies is a special factor counselling hesitation. *See, e.g.*, *Hernandez*, 589 U.S. at 103-08; *Abbasi*, 582 U.S. at 141-43.

## II. The Individual Defendants Are Entitled to Qualified Immunity.

Because plaintiffs cannot establish a *Bivens* cause of action, this Court can reverse on that basis alone. In any event, the district court's qualified-immunity

analysis is further flawed and independently warrants reversal. Government officials are immune from civil liability to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks omitted). To overcome an assertion of qualified immunity, a plaintiff must show that the individual defendants (1) "violated a statutory or constitutional right" that was (2) "clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quotation marks omitted). Plaintiffs' argument fails at both.

**A.** An officer may use deadly force when the officer reasonably believes an individual poses an imminent threat. *Sabbe v. Washington Cnty. Bd. of Comm'rs*, 84 F.4th 807, 827-28 (9th Cir. 2023) (emphasis added). And this Court has specifically recognized that an officer may constitutionally employ such force when the officer reasonably believes the individual is carrying a weapon and presents an immediate threat—even if it is later revealed that the officer was mistaken. *See Napouk v. Las Vegas Metro. Police Dep't*, 123 F.4th 906, 917-18 (9th Cir. 2024); *Estate of Strickland v. Nevada County*, 69 F.4th 614, 618-22 (9th Cir. 2023).

That law controls here. The body camera footage incorporated into the complaint shows that officers reasonably believed that Mattia posed an imminent

11

threat. The video depicts Mattia throwing a long knife in the direction of law enforcement, failing to comply with commands, and making quick movements consistent with reaching for a weapon. The totality of those events makes clear that officers reasonably perceived Mattia as a threat, and thus their use of force in these circumstances was not unconstitutional. Given the "tense, uncertain, and rapidly evolving" situation, the individual defendants made a reasonable, "split-second judgment[]" that Mattia appeared to be reaching for a weapon, and thus deadly force was necessary and warranted. *Graham v. Connor*, 490 U.S. 386, 397 (1989).

Plaintiffs have no response to this Court's decisions in *Napouk* and *Strickland*. Resp. Br. 21. Instead, plaintiffs rely on the conclusory allegations in the complaint that Mattia was "fully compliant" and "posed no immediate threat" to the officers during the encounter. Plaintiffs' characterizations cannot be squared with the body camera footage and must be disregarded. While the complaint alleges that Mattia tossed his knife in a non-threatening manner (ER-22-23), the video shows that Mattia threw the knife toward the officers, an act that the officers reasonably perceived as threatening, causing officers on the scene to draw their weapons. *See* Def. Visual Info. Distrib. Serv., *Body Worn Camera Video Release: Use of Force Incident, Ajo, Arizona*, at 12:15-12:19, 16:00 (May 18, 2023), https://www.dvidshub.net/video/887917/useforce-incident-ajo-arizona-may-18-

12

2023 (Video). The body camera footage further shows that Mattia failed to comply with the officers' instructions to get down on the ground and that when the officers commanded Mattia to put his hands in the air, he put his hand in his pocket instead. Video 12:20-12:27. The body camera footage also shows that Mattia made quick movements when he dug his hand in his pocket, stepped back, and started to turn his body away from the agents—all movements that resemble reaching for a gun.

Plaintiffs speculate that Mattia was confused during his encounter with the Border Patrol agents, but argue he was non-threatening, and that the use of force was not necessary. Resp. Br. 21-22. The Supreme Court has directed courts to judge the "reasonableness at the moment" of the officer's actions not from the perspective of the suspect but "from the perspective of a reasonable officer on the scene," who was operating without the "20/20 vision of hindsight." *Graham*, 490 U.S. at 396. The relevant inquiry is whether a reasonable officer could have perceived Mattia's conduct as threatening. It was reasonable for an officer to consider Mattia's decision to throw the knife towards officers as an initial threat and for officers to view Mattia shoving his hand immediately in his pocket while stepping back and shielding his body away from officers as him reaching for a weapon. This is especially true since Mattia removed an object from his pocket

13

without receiving any instruction to do so and in direct contradiction with instructions to put his hands up.

Plaintiffs also urge that this Court must accept as true the complaint's allegations that "Mattia posed no immediate threat" (Resp. Br. 21), but courts need not and should not accept conclusory allegations of a complaint. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998); *see also Corbitt v. Vickers*, 929 F.3d 1304, 1322 (11th Cir. 2019) ("[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." (alteration in original) (quotation marks omitted)). Nor should courts accept allegations that are contradicted by parts of the complaint. *Steckman*, 143 F.3d at 1295-96. Here, body camera footage clearly contradicts plaintiffs' characterization of Mattia as non-threatening and fully compliant, and the district court erred in concluding otherwise. The video shows that officers reasonably believed Mattia to pose an immediate threat, and accordingly the use of force was reasonable.

Plaintiffs briefly dispute that the complaint incorporates the body camera footage at all. Resp. Br. 26 (arguing "[t]here is no indication that the factual allegations in the complaint stemmed from the footage"). The complaint itself belies this contention—the complaint contains factual details and quotes from the incident that plaintiffs could only have obtained from the body camera recordings,

14

*see* Opening Br. 27, and plaintiffs fail to provide any alternative explanation or meaningfully dispute that the video was properly the subject of judicial notice. *See* Resp. Br. 26-27 (arguing that the video was "ambiguous").

Under this Court's precedent, where a "complaint refers to, and quotes from," body camera footage, that footage is considered incorporated by reference into the complaint. *Mayfield v. City of Mesa*, 131 F.4th 1100, 1104 (9th Cir. 2025). While plaintiffs suggest that the body camera footage was "selectively edited" and shows only one angle (Resp. Br. 22, 26), plaintiffs do not question the video's accuracy in portraying the underlying events. *See Baker v. City of Madison*, 67 F.4th 1268, 1277 (11th Cir. 2023) (holding body camera footage is incorporated by reference into a complaint where the complaint references the footage, the footage depicts the events underlying the claim, and the authenticity of the footage is not challenged).

**B.** Plaintiffs also fail to point to any case establishing that the individual defendants' conduct violated clearly established law, and the Court can reverse the district court's decision on that basis. To overcome an assertion of qualified immunity, plaintiffs must "'identify a case where an officer acting under similar circumstances was held to have violated' the Constitution." *Zorn v. Linton*, 146 S. Ct. 926, 930 (2026) (per curiam) (citation modified); *see also District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) ("The precedent must be clear enough that every

15

reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply."); *Mullenix v. Luna*, 577 U.S. 7, 18 (2015) (per curiam) (an established precedent must speak "clearly to the specific circumstances"). As explained, no such clearly established law exists here. Opening Br. 31-35.

Plaintiffs point to the same cases identified by the district court for the broad proposition that an officer may not use deadly force to seize an "unarmed, nondangerous suspect" who does not pose an immediate threat. Resp. Br. 24 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004) (per curiam) (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985))). But none of the cases plaintiffs or the district court cite contain the "high degree of specificity" required for showing that a right is clearly established with respect to the particular facts at issue here. *Zorn*, 146 S. Ct. at 930 (quotation marks omitted). For the reasons explained (Opening Br. 33-34), none of those cases address the circumstances here—a noncompliant suspect, throwing a weapon towards officers, and making quick movements that resembled reaching for a weapon. If anything, these factors underscore that the officers reasonably believed Mattia posed an imminent threat. *See Napouk*, 123 F.4th at 917-18; *Estate of Strickland*, 69 F.4th at 618-22.

## III.        Plaintiffs' Jurisdictional Arguments Lack Merit.

This Court has jurisdiction to review the district court's denial of qualified immunity as well as the antecedent question of the availability of a *Bivens* remedy.

16

*See Mejia*, 61 F.4th at 665.  It is well-established that federal courts of appeals have interlocutory appellate jurisdiction to review an order denying qualified immunity at the pleading stage.  *Ashcroft v. Iqbal*, 556 U.S. 662, 671-72, 675 (2009) (holding that a district court's order denying a motion to dismiss was "a final decision under the collateral-order doctrine over which the Court of Appeals had … jurisdiction").  This Court routinely reviews orders denying a motion to dismiss on qualified immunity grounds.  *See, e.g.*, *Pettibone*, 59 F.4th at 452; *Harper v. Nedd*, 71 F.4th 1181, 1184 (9th Cir. 2023).

Plaintiffs erroneously contend, however, that this Court lacks jurisdiction because, in their view, the denial of qualified immunity was based on a factual dispute rather than a legal question.  Plaintiffs rely on *Johnson v. Jones*, which held that questions concerning "evidence sufficiency, *i.e.*, which facts a party may, or may not, be able to prove at trial," are "not appealable." 515 U.S. 304, 313 (1995) (quotation marks omitted).  That reliance is entirely misplaced.  *Johnson* concerned evidence-sufficiency questions at summary judgment that are not presented here.

In evaluating a motion to dismiss for qualified immunity, courts ask whether the "complaint sufficiently alleges a clearly established violation of law." *Iqbal*, 556 U.S. at 673.  That is a "purely legal decision" that "does not turn on whether the plaintiff can in fact elicit any evidence to support his allegations."  *George v. Rehiel*, 738 F.3d 562, 571 (3d Cir. 2013) (quotation marks omitted); *Guzman v.*

17

*Acuarius Night Club LLC*, 167 F.4th 217, 221 (4th Cir. 2026) ("[A] ruling under Rule 12(b)(6) presents a pure question of law, which simply inquires whether the complaint alleges sufficient factual matter, accepted as true, to provide a sufficient basis to 'state a claim to relief that is plausible on its face.'"). Courts of appeals have thus recognized that "whatever its bite on summary judgment, *Johnson* is toothless at the pleading stage." *Gelin v. Maryland*, 132 F.4th 700, 708 (4th Cir. 2025); *see also Henry v. Essex County*, 113 F.4th 355, 360 (3d Cir. 2024) ("Whether a complaint pleads allegations that overcome qualified immunity or fall with the limits of the cause of action created in *Bivens* is a purely legal issue that can be resolved on the pleadings at the motion-to-dismiss stage."); *Lewis v. Tripp*, 604 F.3d 1221, 1226 (10th Cir. 2010) (describing exceptions to *Johnson*, one of which is that a court of appeals "need not defer to the district court's assessment of the reasonable factual inferences that arise from a complaint at the motion to dismiss stage, but may instead assess for [itself] the sufficiency of the complaint as a matter of law *de novo*").

The Supreme Court has recognized that "*Johnson* is not implicated" in interlocutory review of a denial of a motion to dismiss based on qualified immunity. *Iqbal*, 556 U.S. at 674-75. In *Iqbal*, the Court explained that *Johnson* concerned a "fact-related" legal inquiry at summary judgment on a "pretrial record." *Id.* at 674 (quotation marks omitted). Those concerns "are absent,"

18

however, "when an appellate court considers the disposition of a motion to dismiss a complaint for insufficient pleadings," as the court need only consider "the allegations contained within the … complaint" and whether those allegations are sufficient to state a claim, "a task well within an appellate court's core competency." *Id.* Because "[e]valuating the sufficiency of a complaint is not a 'fact-based' question of law," the court of appeals had jurisdiction under the collateral-order doctrine to review a denial of a motion to dismiss. *Id.* at 674-75.

Plaintiffs confuse the purely legal assessment of the sufficiency of the allegations at the motion-to-dismiss stage with an unreviewable factual dispute. Resp. Br. 13. Identifying inconsistencies within a complaint is not the same as disputing which facts can or cannot be proven at trial. A court's assessment of inconsistencies within a complaint, such as the contradictions between the conclusory assertions that Mattia was fully compliant and the facts portrayed in the body camera footage incorporated in the complaint, is thus not an evidence-sufficiency question. Courts assess inconsistences within a complaint to determine whether a complaint contains sufficient factual allegations to state a claim, and courts "need not … accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *id.* (explaining that a plaintiff may "plead himself out of a claim by

19

including unnecessary details contrary to his claims"). Where a complaint incorporates "video depictions of events," those depictions "should be adopted over the factual allegations in the complaint if the video 'blatantly contradict[s]' those allegations." *Mayfield*, 131 F.4th at 1104 (alteration in original) (quoting *Harmon v. City of Arlington*, 16 F.4th 1159, 1163 (5th Cir. 2021)); *see also Hodges v. City of Grand Rapids*, 139 F.4th 495, 506-07 (6th Cir. 2025) ("[I]f a video clearly depicts a set of facts contrary to those alleged in the complaint, this makes a plaintiff's allegations implausible." (quotation marks omitted)); *cf. Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (reversing a denial of qualified immunity on the basis that lower courts erroneously adopted the plaintiff's version of the facts, which were "blatantly contradicted" by the videotape of the underlying event).

Plaintiffs are plainly incorrect to argue that this Court cannot assess the inconsistencies in the complaint itself but must instead defer to the district court's conclusion that the body camera footage does not blatantly contradict the allegations in the complaint. Resp. Br. 13-14 (contending that "[w]hether body camera footage 'blatantly contradicts' a complaint's allegations is nothing if not factual dispute"). The sufficiency of the complaint's allegations is a legal question, reviewable de novo by this Court. *See Iqbal*, 556 U.S. at 674; *id.* ("[D]etermining whether [a] complaint has the 'heft' to state a claim is a task well within an appellate court's core competency.").

20

## CONCLUSION

For the foregoing reasons, the district court's denial of the individual defendants' motion to dismiss should be reversed.

Respectfully submitted,

BRETT A. SHUMATE
   *Assistant Attorney General*

JAYNIE LILLEY

 *s/ Sophia Shams*
SOPHIA SHAMS
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7213*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 514-2495*
   *sophia.shams@usdoj.gov*

MAY 2026

21

## CERTIFICATE OF COMPLIANCE

I hereby certify that this reply brief complies with the limit of Ninth Circuit Rules 21-2(c), 32-1(b), and 32-3(2) because it totals 4,667 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).  I further certify that this petition complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E), 32(a)(5)-(6) because it has been prepared using Microsoft Word 2013 in a proportionally spaced typeface, 14-point Times New Roman font.

*s/ Sophia Shams*
Sophia Shams

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2026, I electronically filed the foregoing with the Clerk of the Court by using the appellate case management system.  Participants in the case are registered ACMS users, and service will be accomplished via ACMS.

 *s/ Sophia Shams*
Sophia Shams